NO. 07-10-0099-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 16, 2011

_____

MICHAEL TAYLOR, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2010-426,358; HONORABLE BRAD UNDERWOOD, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Michael Taylor, was convicted by a jury of aggravated assault with a deadly weapon[1] and assessed punishment at twenty years confinement. He asserts the trial court erred by: (1) overruling his objection to a photograph that he considered unfairly prejudicial and (2) permitting a witness to testify when, prior to trial, the witness had given two sworn statements to police officers that were contradictory. We modify

_____

[1]See Tex. Penal Code Ann. § 22.02(a)(2) (West 2011). Unless otherwise indicated, future references to § ____ are references to the Texas Penal Code.

the trial court's written judgment to correct the "Offense for which Defendant Convicted" and "Statute for Offense" and to further clarify that payment of $10,006.50 in court-appointed attorney's fees is not a part of the court costs ordered in the case, and we affirm the judgment as modified.

## Background

An indictment was returned alleging that, on or before May 9, 2009, Appellant committed the offense of aggravated assault by intentionally, knowingly, or recklessly causing bodily injury to Danny Mahaffey by striking him, and that during the commission of that offense Appellant used or exhibited a deadly weapon, to-wit: his hand and foot.[2] In February 2010, a three day trial was held. The evidence at trial showed that Appellant and a second assailant hit, kicked, and stomped Mahaffey's head and body causing serious bodily injury including physical impairment.

At the trial's conclusion, the jury convicted Appellant of aggravated assault with a deadly weapon and sentenced him to twenty years confinement. In its *Judgment of Conviction By Jury*, the trial court recited the "Offense for which Defendant Convicted" to be "Aggravated Assault w/Deadly Weapon-SBI" and the "Statute for Offense" to be § 22.02(a)(1), and it assessed court costs of $10,315.50, $10,006.50 of which were for court-appointed attorney's fees. This appeal followed.

---

[2]Paragraph one of the Indictment alleged that, on or before May 9, 2009, Appellant intentionally, knowingly, or recklessly caused serious bodily injury to Mahaffey by striking him with Appellant's hand and foot. This alternative means of committing aggravated assault was not submitted to the jury.

**Discussion**

Appellant asserts the trial court erred in admitting a photograph of him in a white, sleeveless T-shirt taken several days after the beating occurred because an assailant in a surveillance video of the assault was also wearing a white sleeveless T-shirt. Appellant contends he was unfairly prejudiced because the jury might conclude he was involved in the assault merely because his clothing in the subsequent photograph was similar to an assailant's clothing in the video. Appellant also contends the trial court erred by permitting Mekala Taylor to testify to the events she observed when the assault was taking place because she had previously given police officers inconsistent statements.

**Standard of Review -- Evidentiary Error**

Because trial courts are in the best position to decide substantive admissibility questions, we review a trial court's decision to admit or exclude evidence for abuse of discretion; *Page v.* State, 213 S.W.3d 332, 337 (Tex.Crim.App. 2006), and "will uphold a trial court's ruling on admissibility of evidence as long as the trial court's ruling was at least within the zone of reasonable disagreement." *Id.* *See Hernandez v. State*, 205 S.W.3d 555, 558 (Tex.App.--Amarillo 2006, pet. ref'd).

In assessing harm for an evidentiary error, we review whether the error could have affected Appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Solomon v. State,* 49 S.W.3d 356, 365 (Tex.Crim.App. 2001). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble v. State,* 330 S.W.3d 253, 280 (Tex.Crim.App. 2010), *cert. denied,* ___

U.S. \_\_\_, 131 S.Ct. 3030, 180 L.Ed.2d 846 (2011).  Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect."  *Solomon*, 49 S.W.3d at 365.  In making a harm analysis, we examine the entire record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence.  *Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App. 2000).

### First Point of Error

Assuming without deciding that the trial court erred in the admission of the photograph, we find that the error did not have a substantial or injurious effect or influence on the jury's verdict.  Appellant asserts that the harm suffered from the admission of the photograph is evidenced by the jury's specific reference to the photograph and a potential deadlock in two jury notes.  While the jurors were deliberating, they submitted Jury Note #3 asking the trial court for the date when the contested photograph at issue was taken.[3]  The trial court responded that "the information you have requested was not introduced into evidence and is therefore not available."  Later during their deliberations, the jury submitted Jury Note #7 indicating they "seem[ed] to be deadlocked 11-1 that the defendant Michael Taylor was at the scene of the crime," and asked the trial court's advice.[4]

---

[3] The jurors submitted a total of seven notes and, in addition to Note #3, the jury requested all pictures, videos, court transcripts, defense's opening statement and Mekala's testimony.

[4] The trial court responded with a Supplemental Charge (commonly referred to as an *Allen* charge) describing what would occur in the event that the trial court declared a mistrial and asked the jury to continue deliberations in an effort to arrive at a verdict acceptable to all jurors without doing violence to any juror's conscience. *See Allen v. United States,* 164 U.S. 492, 501, 41 L.Ed. 528, 17 S.Ct. 154 (1896).

The jury charge expressly instructed the jury that they could "consider only the guilt or innocence of the defendant *from the evidence admitted before you . . . ."* (Emphasis added). The jury was also instructed that "it is only from the witness stand that the jury is permitted to receive evidence regarding the case" and "[i]n deliberating on the cause you are *not to refer to or discuss any matter or issue not in evidence before you . . . ."* (Emphasis added).

In evaluating jury instructions, both oral and written, juries are "presumed to follow the trial court's instructions in the manner presented." *Walker v. State*, 300 S.W.3d 836, 850 (Tex.App.—Fort Worth 2009, pet. ref'd) (quoting *Kirk v. State*, 199 S.W.3d 467, 479 (Tex.App.—Fort Worth 2006, pet. ref'd). *See Williams v. State*, 937 S.W.2d 479, 490 (Tex.Crim.App. 1996) ("we assume that the jury would follow the instructions as given"). Courts will abandon this presumption only if there is evidence showing that the jury did not follow the instructions. *Id.*

Appellant has presented no evidence to indicate that the jury abandoned the trial court's charge and unduly considered any temporal relationship between the photograph and the video. That the jury indicated to the trial court in Jury Note #7 that they were potentially deadlocked on the issue of whether Appellant was present at the scene of the crime merely indicates that, after reviewing all the evidence presented at trial, including those items specifically requested in other jury notes, the jury might have been deadlocked.

In addition, there was testimony from three eyewitnesses[5] to the assault who identified Appellant as an assailant and two detectives[6] who testified that, as a result of their investigation, Appellant was identified as one of the assailants in a surveillance video taken at the scene of the assault.[7]   Notwithstanding the fact that Appellant's counsel ably sought to discredit and impeach the testimony of the three eyewitnesses during cross-examination, the jury is the sole judge of the weight of the evidence and the credibility of witnesses.   Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000) (jurors may choose to believe some testimony and disbelieve other testimony).   We may not re-evaluate the weight and credibility determination made by the fact-finder; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), and must resolve inconsistencies in the evidence in favor of the verdict.   *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000) (citing *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988)).

Accordingly, we find the trial court's error, if any, in admitting the photograph had no effect on the jury's verdict due to the contents of the jury charge coupled with the trial court's answer to Jury Note #3, and that the record evidence was not so evenly balanced on the issue of whether Appellant was present at the crime scene as to create any "grave doubt" whether the jury's verdict was free from any substantial influence of the error. *See Burnett v. State*, 88 S.W.3d 633, 637-38 (Tex.Crim.App. 2002). Appellant's first point of error is overruled.

---

[5]Lenzy Menton, Daphnie Craft and Mekala Taylor.

[6]Detectives Williams and  Lindley.

[7]Whether there is overwhelming evidence supporting the particular issue to which the erroneously admitted evidence was directed is one factor in our analysis.  *Coble*, 330 S.W.3d at 280.

**Second Point of Error**

Appellant also contends the trial court erred by permitting Mekala Taylor to give her eyewitness account of the assault because, prior to trial, she gave a sworn statement to law enforcement that Appellant was not involved in the assault and then, after viewing the surveillance video, gave a second sworn statement indicating that she had lied in the first statement and Appellant was one of two assailants involved in the assault. In support, he asserts her testimony at trial should have been excluded because the State violated article 38.23 of the Texas Code of Criminal Procedure[8] by permitting her to commit perjury at trial.[9] At trial, Mekala's testimony, considered in a light most favorable to the verdict, was that her second statement was given to law enforcement after she watched the surveillance video which contained footage of her, Appellant and another assailant. An officer transcribed her oral account of what occurred in the video. Afterwards, she signed the statement.

Appellant's argument distilled to its essence is that, when Mekala gave two mutually exclusive statements to police prior to trial, she committed perjury and, by permitting her to testify to one of the statements at trial, she was committing perjury again because, regardless of what her testimony would be, it had to contradict or be inconsistent with one of the two prior sworn statements. The flaw in Appellant's

---

[8]Article 38.23 states, in pertinent part, that "no evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).

[9]A person commits the offense of perjury if, with intent to deceive and with knowledge of the statement's meaning makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath. *See* Tex. Penal Code Ann. § 37.02(a) (West 2011).

7

argument is that, by his own account, one of the two statements given prior to trial had to be true while the other had to be false. At trial, Mekala agreed with Appellant's counsel that she was there just to answer questions truthfully and honestly. In addition, when asked by the trial court, the State responded that they believed she was going to testify truthfully on the witness stand and, based upon the jury's verdict, they must have found her testimony truthful.

In addition, Appellant cites to no rule of evidence that would prevent Mekala from testifying to a statement at trial that was inconsistent with a statement made before trial. Rather, the Texas Rules of Evidence assume that such testimony is admissible and the witness "must be afforded an opportunity to explain or deny such statement." *See* Tex. R. Evid. 613(a). Neither does Appellant cite a single law that the State violated by examining Mekala in its case-in-chief. If perjury was committed, it would have occurred when she signed one of her two inconsistent statements prior to trial. At trial, the State represented to the trial court that they believed she would testify truthfully. And, during her testimony, she adopted her second statement which was consistent with the events contained on surveillance video and described in the testimony of Menton, Craft, Detectives Williams and Lindley. Moreover, that Mekala made two prior inconsistent statements before trial, equivocated at trial to some extent and was somewhat inconsistent in her present recollection of past events goes to the weight and credibility of her testimony, issues which, as stated earlier in this opinion, we may not re-evaluate. *Dewberry*, 4 S.W.3d at 740. All inconsistencies in the evidence must be resolved in favor of the verdict. *Curry*, 30 S.W.3d at 406.

8

Accordingly, we find the trial court did not abuse its discretion by permitting Mekala to testify regarding her two sworn statements made to law enforcement prior to trial because, at the very least, the trial court's ruling was within the zone of reasonable disagreement. *See Page*, 213 S.W.3d at 337; *Hernandez*, 205 S.W.3d at 558. Appellant's second point of error is overruled.

## Judgment of Conviction and Court-appointed Attorney's Fees

We also note two issues not raised by Appellant regarding the judgment of conviction and the assessment of court-appointed attorney's fees.[10] While the written judgment reflects the "Offense for which Defendant Convicted" to be "Aggravated Assault w/Deadly Weapon-SBI"[11] and the "Statute for Offense" to be §22.02(a)(1) (assault causing serious bodily injury), the undisputed record reflects that the jury convicted Appellant of aggravated assault pursuant to § 22.02(a)(2) (use or exhibition of a deadly weapon during the commission of an assault). Therefore, we modify the trial court's judgment to reflect the correct offense and statutory basis for conviction.

Furthermore, the judgment reflects an assessment of court-appointed attorney's fees totaling $10,006.50 as costs of court. In order to assess attorney's fees as court costs, a trial court must determine that the defendant has financial resources that enable him to offset in part, or in whole, the costs of the legal services provided. Tex.

---

[10]Courts of appeals may review unassigned error in criminal cases, particularly where the record discloses error that should be addressed in the interest of justice. *Hammock v. State,* 211 S.W.3d 874, 878 (Tex.App.—Texarkana 2006, no pet.). Where, as here, the error appears on the face of the judgment and does not involve the merits of the criminal trial, but instead solely addresses the clerical correctness of the judgment, we find that the interest of justice allows that we address these issues. *Perez v. State,* 323 S.W.3d 298, 307 (Tex.App.—Amarillo 2010, pet. ref'd).

[11]We understand "SBI" to mean serious bodily injury.

9

Code Crim. Proc. Ann. art. 26.05(g) (West 2009). Here, the clerk's record reflects the trial court found Appellant indigent and unable to afford the cost of legal representation and appointed an attorney to defend him in the trial court's proceedings. Unless a material change in his financial resources occurs, once a criminal defendant has been found to be indigent, he or she is presumed to remain indigent. Tex. Code Crim. Proc. Ann. art. 26.04(p) (West Supp. 2011). Therefore, because there is evidence of record demonstrating that Appellant was indigent and qualified for court-appointed counsel, we presume his financial status has not changed.

Furthermore, the record must reflect some factual basis to support the determination that the defendant is capable of repaying court-appointed attorney's fees. *Perez v. State,* 323 S.W.3d 298, 307 (Tex.App.—Amarillo 2010, pet. ref'd). *See Barrera v. State,* 291 S.W.3d 515, 518 Amarillo 2009, no pet.); *Perez v. State,* 280 S.W.3d 886, 887 (Tex.App.—Amarillo 2009, no pet.). We note that the record in this case does not contain a pronouncement, determination, or finding that Appellant had financial resources that enable him to pay all, or any part of, the fees paid his court-appointed counsel, and we are unable to find any evidence to support such a determination. Therefore, we conclude that the order to pay attorney's fees was improper. *See Mayer v. State*, 309 S.W.3d 552, 555-56 (Tex.Crim.App. 2010). No trial objection is required to challenge the sufficiency of the evidence regarding the defendant's ability to pay. *Id.* When the evidence does not support an order to pay attorney's fees, the proper remedy is to delete the order. *Id.* at 557. *See also Anderson v. State*, No. 03-09-00630-CR, 2010 Tex. App. LEXIS 5033, at *9 (Tex.App.—Austin, July 1, 2010, no pet.) (modifying

10

judgment to delete court-appointed attorney's fees).  Accordingly, we modify the judgment to delete the assessment of $10,006.50 in attorney's fees as costs of court.

## Conclusion

Having modified the trial court's judgment to correct the offense and underlying statutory basis for conviction, and having deleted the order obligating Appellant to repay $10,006.50 in court-appointed attorney's fees, the judgment, as modified, is affirmed.

Patrick A. Pirtle
Justice

Do not publish.